1817.

*Pittsburg.*

September.

BONIFACE *against* SCOTT.

IN ERROR.

ERROR to the Common Pleas of *Allegheny* county.

The single question in this case was, whether the wages of a bar-keeper in a tavern are to be considered as servants' wages, so as to entitle him to a preference under the intestate law of the 19th *April*, 1794, sect. 14.

*The wages of a bar-keeper in a tavern, are to be considered as servants' wages, and are entitled to a preference as such, under the intestate act of 19th April, 1794.*

*Wilkins*, for the plaintiff in error. Courts have restricted the term " servants" used in the act, to persons employed in the house, and about the intestate's person. The reason of the law was, that when disease had rendered the master helpless, there might be an additional inducement to attention. The case, *ex parte Meason and another, administrators of Ashman*, 5 *Binn.* 167, settles this question. A bar-keeper is not a menial; he is not on the same footing with a coachman, waiter, or gardener. He serves the guests exclusively. He keeps his master's books ; and is, therefore, more properly to be considered as a clerk. If the clerk of an iron-master is excluded, the clerk of a tavern-keeper should be by the same reason. If the popular meaning be the rule, then in common parlance, a bar-keeper is not a servant.

*Baldwin*, contra. It is only necessary to advert to the instances put in the case cited from 5 *Binn.* to be convinced, that this case falls within the class of servants. The object of the law was, to protect those employed in the economy of the house, whether it be a public or private house. A bar-keeper is emphatically a person of that description. He is the servant of the master, and of all his guests. He has various other duties besides keeping the books. Like the cook, or the ostler, he has an appropriate department ; but like them he is under the immediate direction of the master. To protect the master in his last sick.... was not the only motive of the act ; otherwise wages growing due before, would not be preferred.

**1817.**

BONIFACE
*v.*
SCOTT.

TILGHMAN C. J. was sick and absent.

GIBSON J. To restrict the operation of the act to servants in the popular sense of the word would defeat the intention of the legislature. In *Pennsylvania* none are called servants whose persons are not subjected to the coercion of the master, whether the business in which they are employed, be servile or not. No person to whom wages *could* be due for his services, would endure the name, as it would be considered offensive and a term of reproach. I take all who are employed for hire in the domestic concerns of the family, in whatever station they may be, to be servants entitled to a preference under the act. Neither do I apprehend it to be necessary, that the occupation of such person should be exclusively confined to the family. If he be partially employed for that purpose, it will be sufficient. The clerk in a counting house, &c. is exclusively concerned with the occupation or trade by which his employer gets his living; and there being nothing of a domestic cast in the nature of his services, he would not fall within the act. If in this country a tavern were a separate establishment unconnected with the domestic scene, I should suppose the plaintiff not entitled to a preference; but the contrary is the fact. With perhaps the exception of one or two large establishments in *Philadelphia*, the concerns of the tavern and the family are so blended, that it is impossible to separate them. Disbursements are indiscriminately made for the support of both; the guests and the family most frequently sit at the same table; and alternately occupy the same chambers and apartments; so that it is impossible in any department of the house, to say such and such services appertain to the domestic economy of the family, and such others, to the concerns of the house as a tavern. The duties of the bar-keeper are as various in their nature as any other person employed about a tavern. We know that his services are not confined to keeping the books or attending to the bar of the house. It is usually expected, that he will have an eye to the general conduct of the other servants, to the marketing, and in short to the whole business of the house. He is usually the *locum tenens* of the landlord in his absence; and his business is of domestic, as well as public, concern. He

therefore falls within the principle of *ex parte Meason et al. administrators of Ashman*, 5 *Binn*. 167.

To secure attention to the wants of an intestate during his last sickness, may have been, and probably was, one motive that induced the legislature to give this preference to menial servants; but it was not the only one. To confine its operation to those immediately employed around his person during the closing scene, would necessarily exclude most of the domestics of the family; and limit the claim of those entitled to preference, to that part of their wages that was earned during the actual indisposition of their master. It is of importance, that the various duties of all the domestics of a family should be duly attended to during a period of sickness and distress. Desertion from their respective posts when the helplessness of the intestate's situation demands the undivided attention of his relations and friends, to the care of his personal comforts, would be more sensibly felt than at any other time; and this kind of preference may have been intended as a premium for the performance of a duty. But beside this, motives of compassion towards a class of people, whose situation in life is certainly not an enviable one, and whose poverty renders them not very well able to bear the loss of any part of the pittance they may have earned in servile employments, had probably a more active agency in procuring them a preference, than mere considerations of policy. I therefore think the plaintiff ought not to be excluded, because the nature of his occupation did not necessarily lead to an employment about the person of the intestate. I consider his business as a bar-keeper to have been intimately connected with the domestic economy of the house, and that he is embraced by the true spirit and meaning of the act of assembly. The judgment must be affirmed.

DUNCAN J. The term "servants," whose wages under the act of 1794, are ranked with physic and funeral expenses, to be paid out of the intestate's estate, has received a judicial construction, *ex parte Meason*, 5 *Binn*. 167. It has been held to embrace those only, who, in common parlance, are called servants; that is, as I understand the opinion of the Court, hirelings who make a part of a man's family, employed for *money*, to assist in the economy of the family, or in matters connected with it. Does a bar-keeper fall under this deno-

mination? The duties of this class of hirelings are various, and incapable of definition. In large establishments in populous cities, differing greatly from our country establishments, where they act different parts in the conducting of the affairs of the *inn;* book-keeper, bar-keeper, waiter, and sometimes other more servile office. Bar-keeper, *ex vi termini,* imports a person hired, who, from the nature of his station, is forced to perform servile offices within the walls of a public house. He is a domestic, living *intra mœnia;* assisting in the economy of a family. They are hirelings, making a part of the family, whose sole occupation and employment is about the house; many of whose duties are menial, subject to the command, not *only of his* employer, but *of all his* guests, in matters connected with such employment.

The case of the bar-keeper appears to me much stronger than that of the gardener, who lives out of the family, and who, it is held by one of the Judges in the case of *Meason,* falls within the true meaning of the law. The gardener has little concern with family scenes. Of all services this is the least connected with the general economy of a family; the most honourable; the least personal; and which tends least to degrade a man, and sink him to the grade of a common servant. Exclude the bar-keeper, you exclude almost every hireling in the country, on the same principle. You leave few for this provision to operate on. None but indented servants, or coloured hirelings; for they, in common parlance, alone are called servants. A house-keeper, who superintends the interior affairs of the household; the nurse, who takes care of the children; though not, in common parlance, called servants, yet forming a part of the family, would be included in this provision. In short, all the hirelings employed in service in and about the house, and household affairs, or whose business it is to assist in the economy of the family; the stable-boy; the coachman; and all that class of hirelings, fall within the reason of the law. In legal phrase, they are menial servants; and whether, in common parlance, they are called servants; or whether, as that term seems degrading, courtesy gives them a less offensive appellation, as gardener, house-keeper, nurse, coachman, or bar-keeper, they are menial servants; are servants within the meaning of the law.

This definition of servants embraced by the act draws a visible boundary between those employed by the deceased,

who fall within the rule, and those who are excluded. It leaves nothing to conjecture, or uncertainty. When the occupation of the person claiming the benefit is stated, the most common understanding can readily perceive, whether he forms one of this class or not. There is then the concurrence of legal signification, of reason and authority, establishing the right of the plaintiff to this priority. The judgment is, therefore, affirmed.