Kimball *v.* Walker et al.

GRANVILLE KIMBALL, Plaintiff in Error, *v.* MARTIN O. WALKER, and JAMES MOORE, Defendants in Error.

ERROR TO COOK.

The rule that objections to the jurisdiction of a court of chancery must be raised by a plea or demurrer in the first instance, extends only to questions of jurisdiction over the parties.

The court may, for its own protection, interpose the objection, at any stage of the proceedings, that it has no jurisdiction over the subject-matter of the suit.

If, however, in such a case, the court below has proceeded to a final decree without objection, and by lapse of time the complainant's action at law would be barred, this court will examine the merits of the controversy.

A submission to an arbitration does not require any particular form of words. Where an arbitrator does not go beyond the terms of the reference, and there is no fraud, mistake, undue influence or corruption, the award must be conclusive upon the parties.

In 1854, Kimball bought of John Frink & Co., for the account of himself and Walker, certain stage property, for $53,000, paying $10,600 in cash, and for the balance giving his notes, which were indorsed by Walker. The business was continued by Kimball & Walker, and afterwards Moore purchased one-third interest in the business, and was admitted as a partner from the date of the purchase, and signed his name to the notes previously given to Frink & Co. Walker paid one-third of the $53,000 to Frink & Co., and Kimball paid the balance. Subsequently, Kimball sold to Walker & Moore all his interest in the firm. It was *held*, that if this excess paid by Kimball over and above his just proportion was an advance to the firm, his claim against the firm had been released by the sale of his interest to Walker & Moore. If, however, it was an advance made to Moore, then he must look to Moore for his pay, and Walker could not be liable in any way for it.

Where a deed conveying real or personal property acknowledges the receipt of the purchase-money, this recital can be explained and contradicted by parol evidence which shows that the money has not in fact been paid. But such evidence cannot affect the legal import of the deed. The grantor is estopped to claim a resulting trust in his favor, or to deny that the deed was executed for the uses expressed in it.

THIS was a bill in chancery filed by plaintiff in error against defendants in error, on the 5th day of February, 1858, in the Circuit Court of Cook county.

The bill states, that prior to the 1st day of July, 1854, complainant, together with John Frink, Martin O. Walker, Loren-

zo P. Sanger, Cyrus D. Davis, and David L. Moore, were engaged in the staging business in the State of Illinois and other States, under the name, etc., of John Frink & Co., and were the owners of a large amount of personal property and real estate.

That on or about the first day of July, 1854, the firm of John Frink & Co. dissolved their partnership.

That on or about the first day of July, 1854, the complainant made an agreement with the late firm of John Frink & Co. to purchase of them all their right, title and interest of, in and to all their property in the State of Missouri and Territory of Kansas, consisting of horses, carriages, harness, rea estate and other property, for which complainant agreed to give $53,000; and to secure the payment thereof, the complainant executed and delivered to said John Frink & Co. his individual promissory note for $10,600, and at the same time made and executed to said John Frink & Co., and delivered to them four other promissory notes made by complainant, and signed by defendant James Moore, and indorsed by the other defendant, Martin O. Walker, for $10,600 each, one of which was payable six months after date, one twelve months, one eighteen months, and the other, two years after the date thereof, all with six per cent. interest.

That after the making and execution of the notes, and on or about the first day of July, 1854, aforesaid, the complainant and defendants entered into copartnership in the business of running stages, carrying passengers and mails, etc., under the name of Kimball, Moore & Co., and on entering into such copartnership, the property so as aforesaid purchased by the complainant of John Frink & Co., was put into and became the property of the said firm of Kimball, Moore & Co., and said Kimball, Moore & Co. were to account to the complainant for the purchase money, being $53,000.

That Kimball, Moore & Co. did not pay the said several notes or any or either of them, but the whole amount thereof, with the interest, was paid by complainant.

That afterwards, to wit, on or about the first day of October, 1855, the defendant Walker accounted with the complain-

ant for $17,638.85, for which complainant gave him a receipt, etc.

That the entire balance of said $53,000, with the interest thereon, is still due and unpaid to the complainant from the said firm of Kimball, Moore & Co.

That afterwards, to wit, on or about the first day of April, 1856, an agreement was made between said parties, by which, among other things, the complainant granted, bargained, sold, assigned, set over and delivered to said defendants all his right, title, claim and interest of complainant in and to all the personal property theretofore and at that time belonging to said firm of Kimball, Moore & Co., including stages; horses, harness, mail contracts with the United States; also, all other property not therein enumerated; also, all the interest of said Kimball in and to all the real estate belonging legally or equitably to said firm of Kimball, Moore & Co., including leasehold and all other interest, whatever the same was, then in said firm, or in the name of either or any of the individual members of said firm, or in the name of other parties (excepting thereinafter mentioned); and it was further agreed that deeds, releases, and all other necessary evidences of title should be, within a reasonable time, made by said Kimball to said defendants for his said interest in such real estate. It was further, by said agreement, agreed that the partnership theretofore existing between said parties, should be and was thereby dissolved, and the business was to be continued by said defendants. It was further agreed, that an account was to be taken and settlement made by William Vernon, of and concerning all moneys received by complainant belonging to said firm, and of and concerning all disbursements made by said Kimball for and on account of said firm, and all accounts between said late firm of Kimball, Moore & Co. and complainant, were to be finally and fully settled by the decision of said Vernon, and in the settlement of said accounts said Kimball was to be allowed the sum of $1,200 for his services.

That in and by said agreement it was further agreed, that the said defendants should pay the complainant, as a consideration for the sale of his interest in said property to said

defendants, the sum of $5,000 within four months of the date of said agreement, with ten per cent. interest, and the further sum of $13,166 within three years from the date thereof, with interest annually at ten per cent.

The complainant, in his bill, claims and insists that the defendants became jointly liable to pay him the amount that should be found due him upon a just accounting for the said notes, or the subject-matter thereof, etc.

It is further stated in the bill, that said notes were made and signed, and indorsed by all parties, so as to make both defendants liable upon said notes. The agreement is copied in full, marked A.

It is further stated in the bill, that after the making of the last mentioned agreement, to wit, on or about the first day of April, 1856, the complainant and defendants appeared before the said William Vernon and produced their respective accounts, and the said William Vernon having examined the same, awarded and decided that there was due to the complainant from said Moore and Walker, the sum of $14,133.74, on the first day of April, 1856.

That upon such submission and examination before and by said William Vernon, the said notes hereinbefore mentioned, or the subject-matter thereof, and the moneys paid thereon by complainant, were not submitted to or passed upon by said Vernon; that the complainant insisted that the said notes and the subject-matter thereof should be taken into account, and be passed upon by said Vernon, but the defendants insisted that they did not come within the said submission, and that the said arbitrator had no right to take them into consideration, and the said Vernon so held and decided, and the same were excluded, and were in no way or manner submitted to or passed upon by said arbitrator.

That immediately after the execution and delivery of such agreement, the complainant withdrew from said firm of Kimball, Moore & Co., and all the right, title and interest of said complainant to the property so sold and transferred, or agreed to be, to the said defendants, was turned over to, and possession thereof taken, by said defendants, who have ever since

had, and still have, use and enjoy the same, except such as they have converted and disposed of.

That complainant has executed deeds, releases, etc., and left them with said Vernon for said defendants, and has at all times offered and been willing to execute and deliver all other papers, agreements and releases, etc., if they shall require it.

That complainant has applied to them to account, etc.

Prayer for an accounting, etc., and that defendants pay complainant the amount due him, etc., and the amount due him for moneys paid upon said notes, etc., and for further and other relief. Oath waived.

On March 29, 1858, defendant Walker filed his separate answer.

The answer admits the partnership of John Frink & Co., as stated in the bill.

The answer also admits the purchase by complainant of John Frink & Co., as stated in said bill, and that he made and executed the notes stated in said bill, and that the same were indorsed by defendant Walker; but denies that said purchase was made by defendant for his sole use and benefit, and that Moore at that time signed said notes, or so far as defendant knew, had any interest in them, and claims that the purchase was made on joint account of complainant and defendant Walker.

That immediately after the purchase, complainant took charge of the business under the firm of G. Kimball & Co.

That afterwards, defendant Moore came into the concern, and the firm was then changed into Kimball, Moore & Walker, and some time thereafter Moore signed the notes given for the purchase of the property of John Frink & Co.

That the property purchased of John Frink & Co., was put into and made part of the property of Kimball, Moore & Co.

Defendant denies that Kimball, Moore & Co. agreed to account to complainant for the purchase-money. That he paid complainant $17,638.85 on account of said property and notes.

Defendant denies that complainant paid said notes, and insists that they were paid by both defendants and complainant.

Defendant denies that anything is due complainant from defendants.

That business was not profitable, etc.

Defendant admits that defendants bought out the interest of complainant, as stated in the bill.

Denies joint liability on notes, etc.

Defendant admits the arbitration before Vernon, and that he reported due complainant, $8,778.30, instead of $14,133.74, as stated in the bill.

It may be true, as stated in said bill, that complainant insisted that Vernon should take into account the notes, and that defendant objected, but he neither admits nor denies it. The answer does not claim that the notes were passed upon by Vernon, but insists that he fully paid his one-third, and further states that Moore paid his share.

Defendant claims that all matters were submitted to Vernon, and that he has made his award, etc.

Amendments to bill, praying a set-off.

The statement and award of Vernon in pursuance of the agreement.

Replication to answer of defendant Walker.

Answer of Moore admits the existence of the firm of John Frink & Co., and its dissolution, as stated in the bill.

Admits purchase by complainant, of property of John Frink & Co., but insists it was made for joint benefit of himself and defendant Walker, and admits the giving of the promissory notes.

That some time after making and delivery of the notes, he (defendant Moore) signed the said notes.

That on the first of July, 1854, complainant and defendant Walker entered into copartnership as alleged in the bill, and that some time afterwards defendant Moore was received into partnership as from the same date, etc.

Admits that the property purchased of John Frink & Co. was put into and became a part of the property of the new firm of Kimball, Moore & Co., but denies that said firm of Kimball, Moore & Co. agreed to account to and with the complainant for the value of the same, and claims that Walker

paid complainant the sum of $17,638.85, and $1,000 in full for his share.

Denies that the entire two-thirds of $53,000 is due to complainant.

Admits that defendants purchased of complainant all his interest in said property of Kimball, Moore & Co., as stated in said bill.

Denies that it was intended, by giving said notes, to make said complainant and defendants jointly liable.

Admits that parties appeared before Vernon, and that he made an award, as stated in answer of Moore.

States that on or about the 6th day of December, 1854, he purchased one-third of the property of Kimball, and paid him. Does not state how he paid him.

The answer sets up a bill of sale by Kimball to Moore, bearing date the 6th day of December, 1854, a copy of which is annexed to his answer.

That on the 31st day of July, 1856, he advanced, and complainant received from him, (defendant Moore) divers large sums of money on account, amounting in the aggregate to large sums of money, that is to say, the sum of $22,337.27, for which said complainant executed to said defendant his certain receipts annexed to the answer, marked 1, 2 and 3.

Alleges that business was unprofitable, and refers to a letter annexed to the answer, etc.

Complainant's replication to answer of Moore.

Afterwards, at the April term of said court, upon the final hearing of the cause, a decree was entered dismissing the bill, and the plaintiff brings the case to this court by writ of error.

C. BECKWITH, and E. VAN BUREN, for Plaintiff in Error.

I. On the first day of July, 1854, the complainant purchased of John Frink & Co., consisting of John Frink, Martin O. Walker, Lorenzo P. Sanger, Cyrus D. Davis, and David L. Moore, certain property theretofore used by them in the staging business, in Missouri and Territory of Kansas, for the sum of fifty-three thousand dollars. Ten thousand and six hundred dollars of the purchase money was paid in

cash, and the remainder was to be paid in four equal install-ments, of $10,600 each in six, twelve, eighteen, and twenty-four months from date, with interest at the rate of six per cent. The deferred installments of the purchase-money were secured by four promissory notes of the complainant, dated July 1, 1854, for $10,600, each, payable at the times above mentioned, with interest as above stated, which notes were indorsed by the defendant, Martin O. Walker. This purchase was made on the joint account of the complainant and the defendant, Walker, as admitted by Walker and Moore. At the time said purchase was made, the complainant and Walker entered into copartnership for the transacting of the staging business. Shortly after the purchase was made, the defendant, Moore, was received into the copartnership, as from July 1, 1854. Each of the parties was to pay one-third of said pur-chase-money, and have one-third of the profits, and bear one-third of the losses of the business.

II. The defendant, Moore, upon being received into the copartnership, signed the notes given to John Frink & Co., for the remainder of the purchase-money. By the agreement of the parties, the remainder of the purchase-money was a debt which they were jointly bound to pay, in unequal pro-portions. Kimball was bound to pay $7,066.67, he having already paid $10,600. Walker was bound to pay $17,666.66, and Moore was bound to pay $17,666.67. The complainant claims that he has been compelled to pay more than his share of said common debt, and the first question that arises is, whether a court of equity has jurisdiction to take an account of what each party has paid, and compel contribution from the parties who have not paid their proportion of such sums as they ought to contribute to the discharge of such joint liability. The jurisdiction of the court in such cases is well settled.

III. The objection that the complainant has a perfect remedy at law, comes too late. The defendants should have taken that objection, either by demurrer to the bill, or by insisting upon it in their answers as a bar. After a defendant has put in an answer to a bill in chancery, submitting himself

32

to the jurisdiction of the court, without objection, it is too late to insist that the complainant has a perfect remedy at law, unless the court is wholly incompetent to grant the relief sought by the bill. *Grandin* v. *Le Roy*, 2 Paige, 509.; 23 Pick. 153 ; 2 Johns. Ch. 369 ; 4 Johns. Ch. 290.

IV. The next question in the case is, whether Walker has paid towards the purchase-money the sum he was bound to pay. The purchase, as we have seen, was for the joint benefit of the complainant and Walker, and Walker was bound to discharge one-third of the liability created thereby:

| | | |
|---|---:|---:|
| His original liability was | $17,666 | 67 |
| Interest on the same from July 1, 1854, to September 22, 1855, | 1,304 | 39 |
| | $18,971 | 06 |
| Deduct paid Sept. 22, 1855, | 17,638 | 85 |
| | $1,332 | 21 |
| Interest on balance from September 22, 1855, to December 12, 1855, | 17 | 99 |
| | $1,350 | 20 |
| Deduct paid Dec. 12, 1855, | 1,000 | 00 |
| Balance due from Walker, Dec. 12, 1855, | $350 | 20 |

To this balance of $350.20, should be added interest from Dec. 12, 1855, up to the time of the decree.

V. The next question in the case is, whether Moore has paid towards the purchase-money the proportion of the same, which he was bound to pay. It is admitted that the recital in the bill of sale, from Kimball to Moore, dated December 5, 1854, is *prima facie* evidence of the payment of Moore's share of the purchase-money, but it is insisted that such recital is not conclusive. The authorities cited settle this proposition.

1. The answer sets up a payment on or about December 5, 1854, and there is no pretense of a payment after that time. At this time, nothing had been paid upon the notes to John Frink & Co. It is evident from what transpired in Mr. Lord's office when the bill of sale was drawn, that the consideration

had not then been paid.   Moore had become liable to pay his
portion of the purchase-money by signing the notes to John
Frink & Co., and, therefore, he thought it was right he should
have a paper showing or acknowledging his interest; and,
therefore, the bill of sale was executed and delivered.   The
bill of sale was not executed because Moore had paid, or was
then about to pay, the consideration, but because he had
become liable to pay his portion of the purchase-money by
signing the notes given therefor.   Moore, by this bill of sale,
acquired a title to property valued at $17,666.67, and he, of all
other men, ought to know whether he ever paid therefor.
He told Mr. Vernon repeatedly that he had never put into the
concern more than $1,500.   The claim of Kimball for contri-
bution was presented to Vernon for allowance, and it was
rejected by him as not coming within the terms of the sub-
mission.   If the claim had been paid, Moore would naturally
have said so, if he conversed upon the subject, but instead of
pretending that he had paid for the property in a free talk
upon the subject, he repeatedly admitted that he had never
put into the concern, in any way or manner, over $1,500, and
it appears that Moore did pay some accounts against the firm,
which were allowed him by Vernon.   These were the only
sums which Moore, at that time, claimed he had ever paid or
put into the company.   It is submitted that the testimony
conclusively shows that Moore has never paid the sum which
he was bound to contribute towards the payment of the orig-
inal purchase-money, or any part of the same.   Having shown
that Moore did not pay the consideration mentioned in the
bill of sale from Kimball to him, prior to, or at the time of its
execution and delivery, the burthen of proof is thrown upon
Moore, to show when and how the same was paid after that
time.

2.   It is insisted that the complainant released his claim
against Walker and Moore for contribution, by his bill of sale
to them, dated April 1, 1856.   By this agreement, Kimball
sells to Walker and Moore all the right, title, claim and interest
of said Kimball in and to all the personal property theretofore
and then belonging to the firm of Kimball Moore & Co., in-

cluding stages, horses, mail contracts with the United States; also, all the property not therein enumerated; also, all the interest of said Kimball in and to all the real estate belonging legally or equitably to said firm of Kimball, Moore & Co., including leasehold and all other interest, whatever the same is, now in said firm, or in the name of either or any of the individual members of said firm, or in the name of any other parties. It is manifest that this language applies only to Kimball's one-third interest in the copartnership property, and has no reference to the complainant's claim for money paid out by him for the benefit of Walker and Moore, individually. It might as well be claimed that such language would discharge the individual notes of Walker and Moore, if the complainant had held the same. By the agreement, Kimball was to execute within a reasonable time thereafter, deeds, releases, and necessary evidences of title to Moore and Walker of his (Kimball's) interest in the real estate. The agreement then provides for a settlement of certain matters: first, of and concerning all moneys received by Kimball, belonging to said firm; second, of and concerning all disbursements made by said Kimball for and on account of said firm; third, all accounts between said late firm of Kimball, Moore & Co. and said Kimball. It will be seen that the agreement provides for no settlement of any claim that Kimball had against Walker and Moore individually. The sum to be paid Kimball, was for his one-third interest in the property, and the agreement makes no provision, either for taking an account of moneys paid by Kimball for Walker and Moore, individually, or for the payment of any such moneys.

It appears to have been the view of the pleaders who drew the bill and the answers, that the above agreement provided for taking an account and payment of the moneys paid by Kimball for Walker and Moore, individually; hence, the award of Vernon is set forth in the bill, together with the fact that he refused to consider this claim in making it; and hence, the answer sets up the award as a bar. Now, if it were true that the agreement had provided for an account and payment of the claims of Kimball against Walker and Moore, individ-

ually, then Kimball would have a right to recover the same upon the ground that they were rejected by the arbitrator, as not coming within the submission to him.   With this view of the case, the pleadings were drawn and the evidence taken, and if such were the true construction of the agreement, the bill could be sustained, as has been abundantly shown by Mr. Van Buren in the points of his argument.

VI.   After the original answer of Moore had been filed, some young Christopher Columbus discovered that Moore had a claim against Kimball, and leave was obtained to set up such claim as a set-off, by an amended answer.   The evidence of such claim is contained in Exhibits Nos. 7, 8, and 9.   These exhibits evidently refer to the quarterly settlements made by Kimball, of moneys received and disbursements in the staging business.   The circumstances under which the first exhibit was given, are stated fully by Mr. Spalding.

It appears that Mr. Vernon charged Kimball for all moneys which he had received from all sources, and credited him with all disbursements which he had made.   It appears that all disbursements made by Moore, were taken into the account and allowed to him.   Moore had these exhibits, showing the result of quarterly settlements, as evidence against Kimball, and Kimball had similar ones against Moore.   Vernon did not include any of them, because by a statement of the whole account, they were already included.   Moore said that Vernon did right in rejecting them for this reason: That the receipts were not for money, but for matters relating to the partnership.   And as the accounts were made up from the beginning of their business to that time, in a manner that included the sums mentioned in the receipts, Mr. Vernon did right in not including them in the account a second time. The claim of a set-off, with such evidence to sustain it, does not commend itself to the consideration of a court of justice. When the party himself distinctly says that he has no claim, and gives the reason why he has none, the court should not countenance the setting up of such claims for its serious consideration.

VII.   The amount of Kimball's claim against Moore is one-
third of $53,000,    -    -    -    -    -    - $17,666.67
Interest on the same from July 1, 1854, to Oct.
1, 1855,    -    -    -    .    -    -    -   1,325.00

                                              _____
                                              $18,991.67
The amount of the decree being a mere matter of computa-
tion, the complainant desires a decree to be rendered in this
court for sums he is justly entitled to have a decree for,
instead of remanding the case to the court below.

WALTER B. SCATES, for Defendants in Error.

I.   On the dissolution of the company of John Frink &
Co., and the sale of their staging stock in Missouri, the plain-
tiff became the sole purchaser to the amount of $53,000,
payable in installments, for which he gave his notes, and
Walker indorsed them.   At that time there was an under-
standing between him and Walker, that they would enter
into the same business as partners in Missouri and Kansas.
But afterwards Kimball agreed to take Moore into the same
partnership.   Walker purchased of Kimball one-third of the
stock, stages, etc.; which he had purchased of Frink & Co.,
and afterwards paid up his purchase-money to Kimball, and
overpaid him the sum of $972.19.

The third was sold Walker, July 1, 1854, being $17,666.66.
Walker paid, in all, to Kimball, $18,638.85, leaving a balance
due him of $972.19.

After the sale to Walker, Kimball sold one-third of the
same staging stock to James Moore, and executed to him a
bill of sale under seal, bearing date the 5th December, 1854,
for which Moore paid him in full, as expressed on the face of
the bill of sale.

The above is the manner in which the old staging stock of
Frink & Co. was first sold to Kimball, and by Kimball sold
in undivided thirds to Walker and to Moore individually on
forming a new staging company.   After this company had
carried on business nearly two years, they agreed to dissolve,

and Kimball sold out his interest in the capital stock and profits of the company to Walker and Moore, who entered into a new copartnership and continued the business. This last purchase was a joint one by Walker and Moore, made on the 1st April, 1856. This purchase and transaction—though all the facts respecting it are set forth in this record—has all been paid and settled up, and it only serves to embarrass and befog the case at bar by mixing up the two transactions, both in the allegations of the bill and in the proofs.

I deem it important first to ascertain what the bill seeks to have done—what particular complaint is set forth—and whether equity has jurisdiction. There has been some difficulty in finding out what is the true nature of the injury or right to be redressed, for plaintiff sometimes sets up one and sometimes another. The bill charges that the company of Kimball, Moore & Co. was formed after Kimball purchased the stock, etc., of Frink & Co., but it does not charge that Kimball, Moore & Co., purchased this same stock of him, Kimball, but the bill charges that the same stock " was put into, and became the property of the firm of Kimball, Moore & Co., and said Kimball, Moore & Co. were to account to the complainant for the purchase-money, being $53,000."

Now if this is to be understood as an allegation of a sale to, and purchase by, the company, it is wholly unsupported by a particle of evidence. On the contrary, the whole evidence shows that Walker made his purchase of an undivided third individually, and paid for it. Walker in his answer says the purchase was made by Kimball on joint account of himself and Kimball. And plaintiff's own bill of sale under seal proves that he sold to Moore individually, one undivided third, and received his pay for it from Moore long after Walker had purchased, and without Walker's knowledge or consent at the time.

As a bill, then, to account by the partnership to one of the firm for property sold to the firm by him, it is unsustainable —being wholly untrue in fact, and disproved.

All the members of the firm, it is true, are parties in some

form on the notes given by Kimball for the purchase-money to Frink & Co., but they are not there as a firm, but individually.

At the time those notes were made and Walker's guaranty indorsed, the firm did not exist.

Kimball and Walker contemplated at that time entering into a copartnership, each to take one-half of that property. This arrangement Kimball, some five months afterwards, set aside, by selling one undivided third to Moore, and then, and for the first time, the firm of Kimball, Moore & Co. was formed, and he then signed the notes with Kimball.

If the facts raise any pretense of any sale by the company, it is of a sale by Kimball and Walker to Moore, and not by the company to Walker and Moore. And yet the plaintiff by the bill, seeks to charge Walker as debtor for two-thirds instead of one, and jointly with Moore.

II. The second point raised, if I understand it, is the repetition of the same idea and indebtedness, but in connection with the joint execution and liability on the notes given to Frink & Co., for the stock, stages, etc. The assumption of the bill is, that each was jointly liable, both as principal and purchaser, and when one joint principal pays, he is entitled to contribution.

The principle invoked is true, but the facts do not call for its application. It is true, that all three became liable, but not jointly, nor as principals. The facts show conclusively that Kimball alone was the principal debtor in the purchase of Frink & Co. He so recites and asserts the facts in his bill of sale to Moore.

This was the literal fact, but the true original intent is set forth in a receipt given by Kimball to Walker for his part of the purchase-money, in which it is stated that the purchase, though made in the name of Kimball alone, was on the joint account of Kimball and Walker. In this last paper the original transaction is modified to embrace Moore, who had bought a third intermediately. These payments by Walker, were made on his part of the purchase-money for the property that had been put into the new company.

Kimball is estopped to deny the fact he has so recited and stated in his own deed and bill of sale.

That part of the bill that seeks to give a court of equity jurisdiction, then, to enforce these individual sales by Kimball to Walker, and to Moore, is misconceived. I may as well here answer the fourth point in the plaintiff's brief, in which he would preclude the defendants from questioning the jurisdiction after appearing and answering, and submitting to the jurisdiction.

The counsel overlooks an important distinction, and that is, the distinction between causes and persons over which the equity has concurrent jurisdiction, and those over which and whom it has no jurisdiction. In the former, the party waives his right to question it, by answering:—in the latter, the maxim that consent cannot give jurisdiction applies in its full force. Cooper's Eq. Plead. 161, 2 side; 23 Conn. R. 112.

Now equity has no jurisdiction to enforce ordinary money contracts, nor has it to adjudge damages for common trespasses to person or property, and consent cannot give, neither can consent empower a court of equity to try an ejectment.

These are cases of a common agreement of bargain and sale, and Kimball can just as well sue Moore at law upon this sale as if the property had not been used in a partnership business. Could any one reasonably doubt that an action would lie upon that sale, if any part of the purchase-money remained unpaid?

So the rule contended for may and will apply to cases of personal privilege, which the party waives by answering, and to cases where another court has, or might have jurisdiction, or the party has an election to sue in another jurisdiction. In all these cases, the question as to the jurisdiction is waived by answering.

Upon examination, the cases in 2 and 3 Scam. relate to actual partnership transactions. The cases in Daniels' Chancery Practice, and in Massachussetts and New York, were cases of concurrent jurisdiction. All of them are consistent with the law as I have stated it above.

They do not show that equity may proceed to enforce a

common action of debt, because the defendant has answered instead of pleading to the jurisdiction. Story Eq. Pl., secs. 472—490; Mitford Eq. Pl. 151—153; Cooper Eq. Pl. 140, 141, 160—162; *Morss* v. *Elmendorf*, 11 Paige R. 287; *Lord Coningsby's Case*, 9 Mod. 95; 1 Daniels' Ch. Pr., top 636, side 615; 23 Conn. 112; *Dunnock* v. *Dunnock*, 3 Maryl. Decis. 140; 20 Alab. 289; 2 Bailey, 270; 2 Woodb. & Minch. 217; 3 Barb. Ch. R. 127, 528.

III. But waiving the question of jurisdiction, and also the question of joint liability, we insist upon the merits that by the evidence, Moore paid the full consideration for his third of this property, and also advanced large sums of money to Kimball over and above, and for which the court below ought to have given him a decree.

We might admit the right to treat this sealed bill of sale as a common receipt, as *prima facie*, only of the payment, and still the plaintiff has failed to meet and overcome the *prima facie* evidence of payment. It by no means follows that the money was not paid, because Judge Lord did not see it paid. It may have been arranged, or actually paid, before, or after the drawing up of the bill of sale by him, and before or after its delivery. Judge Lord does not swear that the bill of sale was delivered in his presence.

But I deny wholly the right to introduce parol evidence to explain, alter or vary the sealed bill of sale, either in respect to the payment of the purchase-money, or in respect to its recitals of the purchase by Kimball of Frink & Co., being for himself.

The plaintiff has attempted to vary and contradict the writing in both respects by this witness. Judge Lord makes the parties say that Kimball purchased the property for himself and Moore, or for himself, Moore, and Walker. Whereas Kimball in his bill of sale says that Frink & Co. sold and conveyed to him, and he sells to Moore for $17,666 paid by Moore to him.

The plaintiff's counsel has cited several authorities under his second point, every one of which I have examined. They are all cases of deeds of conveyance. The rule which puts

the recital of payment in a deed upon the common footing of receipts as to the fact of payment, which makes it *prima facie* only subject to parol explanation or contradiction, is an exception to the general rule in relation to explaining, varying or contradicting writings.

The fact of actual payment in deeds of conveyance, is the only exception to the rule in this respect. It does not extend to the fact of payment in other written contracts, whether sealed or unsealed. 1 Greenl. Ev., secs. 275—282.

This distinction is recognized by the court in *Mitchell, etc.,* v. *Maupin*, 3 Monroe R. 187. The court say, "If then there was a bond for the conveyance, and no counter-obligation is shown securing the purchase-money, according to well-settled principles, the bond *per se* must be taken as evidence of consideration, and as such must be treated. Add to this that the writing produced, executed by Richard Mitchell to Samuel, explicitly acknowledges that Samuel had bought from Benton without hinting a lack of payment of the consideration, and that he, Richard, had purchased of Samuel. Hence we conclude that the presumption is fair that Samuel Mitchell had paid the purchase-money, notwithstanding the denial of Richard Mitchell's answer."

Such conclusiveness was given to a presumption of payment from the fact of giving a bond for a deed, without recitals of the payment in it, where no instrument securing the payment was shown to have been taken.

"The want of consideration may also be proved, to show that the agreement is not binding, unless it is either under seal, or a negotiable instrument in the hands of an innocent indorsee." Greenl. Ev., secs. 284, 303.

In the case of the *Duke of New Castle* v. *Clayton*, Finch R. 246, the court held that the acknowledgment of payment in a lease was conclusive. See *Clifford* v. *Turrill*, 9 Juris. 633.

The rule is the same both in law and equity.

There is a distinction between conveyances, receipts, etc., and other contracts, as to the right to show a different consideration than that set forth.

"A receipt containing an agreement, condition, or stipulation between the parties," is in "the nature of a contract, and its stipulations or conditions cannot be varied by parol." 3 Cow. & Hill's Notes, p. 383, note 194.

The reason given by the courts for making the recital of amount and payment of the consideration in deeds an exception to the general rule as to parol evidence, shows its inapplicability to all other contracts in writing, whether sealed or not. It is because it soon became a merely arbitrary sum in conveyancing, seldom being the true amount. Now this is not true of any other contract, as to amount or the fact of payment. To treat the deliberate act of fixing and inserting the amount in a contract, and, declaring its actual payment and receipt as a mere arbitrary act, not designed as evidence of that fact, would take parties by surprise, and would upset their rights.

It is not usual to pass the consideration or pay the money on agreements at the office and in the presence of the attorney or scrivener who draws up the agreement. This case would well illustrate the weak and unsatisfactory nature of the negative statements, such as Judge Lord not seeing any money paid. Subscribing the notes as principal, with Kimball, to Frink & Co., was done doubtless at Chicago, where that transaction occurred, and where the notes were left in Mr. Vernon's hands for collection. It did not occur at the office, nor in Judge Lord's presence. He heard some allusion made to it in the course of the conversation. But he does not pretend that the agreement between Kimball and Moore was either made or recapitulated in his presence. The negotiation had been made before they went into his office. They stated over to him the terms, so as to enable him to put them into writing, and he did so. Having done so, without patent or latent ambiguity, fraud or mistake, Kimball cannot call the scrivener to prove the bargain, but must abide the terms and the facts as they are set forth in the writing. To allow such proof to upset all that has been agreed and written out, after it is executed and the payment made, and property delivered, and

both duly evidenced in the writing, would make a fearful inroad indeed upon well-settled rules respecting contracts.

IV.   In addition to the foregoing—as I think most conclusive answer to the attempt to introduce parol proof—I submit another rule that would wholly preclude the testimony.

Kimball is estopped by the recitals and admissions in his agreement or bill of sale, under seal, from denying or contradicting a fact there deliberately recited and admitted.

He says, "in consideration of the sum of seventeen thousand six hundred and sixty-six dollars, to me paid by said James Moore," he bargained and sold him the property.

The party himself, his heirs, assigns—all privies in blood in law, or in estate, are estopped to contradict or deny facts recited, as well as the matters agreed and covenanted in the deed.   4 Peters' R. 83—88; 6 Peters' R. 611—613; 1 McLean R. 181, 182, 386—389 ; 2 Sugd. on Vend. 689, and note 2 ; 4 Kent Com. 98 ; *Crisman* v. *Matthews*, 1 Scam. 148; *Rigg* v. *Cook*, 4 Gilm. 336 ; *Smith* v. *Whitaker*, 11 Ill. 417; *Massure* v. *Noble*, 11 Ill. 532 ; *Claremont* v. *Carlton*, 2 N. Hamp. 372; *Lord* v. *Wardle*, 32 Eng. C. L. R. 279 ; *McIlvaine* v. *Harris*, 20 Mo. 457; *Butler* v. *Gale*, 27 Vermont, 739 ; *Bank of Utica* v. *Mercereau*, 3 Barb. Ch. R. 528 ; *Wellington* v. *Murdough*, 41 Maine, 281 ; 1 Greenl. Ev., sec. 275 *et seq.*

V.   The court below should have allowed a set-off to Moore, and another to Walker for the excess of payments, and the amount loaned by Moore to Kimball.

The rule is truly laid down in Barbour on Set-off :

" A court of law allows a set-off of judgments *ex gratia*, but in equity it is matter of right.   This power does not depend upon the statutes of set-off, but upon the general jurisdiction of the courts over its suitors.   And it is an equitable jurisdiction."   Barbour on Set-off, 194 ; 2 Story Eq. Jurisp., sec. 1434.

And so also of equitable debts.   2 Story Eq. Jurisp., sec. 1436.

The general rule of set-off is the same at law and in equity. But there are exceptions.

Debts due to principal may be set off by surety in a joint

or separate suit against both, or against surety only. 2 Story Eq. Jurisp., sec. 1437.

There are also other exceptions to the general rule. 2 Story Eq. Jurisp., sec. 1437 *a.*

So the rule admits in equity the right to set off mutual debts between the surety and the creditor of the principal, and this rule obtained in the civil law as well as in equity. 2 Story Eq. Jurisp., secs. 1437, 1442; *Leeds* v. *The Marine Ins. Co.*, 6 Wheat R. 565.

VI. I shall enter into no controversy or discussion relative to the doctrine of arbitrations and awards, or whether this claim was submitted to or passed upon by Mr. Vernon or not. That was not an arbitration, but the mere taking of an account between Kimball as the acting manager and superintendent of the partnership business, with a view to adjust his accounts as such superintendent, and also with a view to ascertain the balance to be paid him for his interest under the agreement for a purchase by Walker and Moore.

Whatever interest Kimball had in the lands, leaseholds, personal property, choses in action, and effects of the partnership, was sold and transferred by the agreement of sale, by Kimball to Walker and Moore.

If the firm became liable to Kimball for two-thirds of the capital stock as is assumed and urged in the fifth and last point made by plaintiff's counsel, then I answer that this claim and demand upon the company, admitting it to be just and due, would have passed, and did pass under the agreement sale to Walker and Moore. *Taylor* v. *Coffing*, 23 Ill. 273.

The whole then passed under this agreement, as well his capital stock as the stages, horses, and other property and effects of the company.

In no aspect of the case then has the plaintiff any show or pretense of a claim upon the company or either of its members.

If the merits of the case are to be gone into and investigated on the assignment of errors in this record, I claim then that the decision, when affirmed, shall be made final against the plaintiff, and that he be not allowed twice to investigate the same merits upon the same facts.

BREESE, J.   A question was presented on the argument of this cause, which was not made in the court below, as to the jurisdiction.   The rule is well settled that where adequate relief can be had at law, and where the subject-matter of controversy is purely a question of law, a court of chancery will not entertain jurisdiction.   The authorities hold, however, if the objection is not taken advantage of by plea or demurrer, in the first instance, it cannot be urged on error or on appeal. 1 Daniel's Ch. Practice, 636.   This is no doubt the rule as to the parties, but we hold it is in the power of the court at any time, to interpose the objection, for its own protection, and thus prevent drawing into the vortex of a court of chancery, matters purely cognizable at law, and that by the management and consent of parties interested.   If such a power did not exist, the lines dividing the jurisdiction of courts of law and of chancery would be speedily obliterated.

It having been suggested, however, that denying now, the jurisdiction of a court of chancery in this case, the complainant below may be subjected to great loss by reason of lapse of time barring an action at law, we have concluded to examine into the merits of the controversy.

The notes executed by complainant, referred to in the bill of complaint, were indorsed by Walker, and, he says in his answer, he was jointly interested with complainant in the purchase.   These notes were deposited with William Vernon, the book-keeper of the old firm of John Frink & Co., and acting as its agent.   Afterwards, but at what precise time is not shown, the other defendant, Moore, by the consent of the other partners, came into the concern and signed the notes so left with Vernon, after which time the business was carried on in the firm name of Kimball, Moore & Co., he, Moore, being an equal partner as from and after the first of July, 1854, the date of the purchase.   Of these notes, Walker, about the 22nd of September, 1854, paid on account thereof, one thousand dollars, and one year thereafter the sum of $17,638.85, and the complainant paid the balance, about the first of October following.   This partnership having existed near two years, was dissolved by complainant selling out his

interest to the defendants on the 1st of April, 1856, as appears from this agreement signed by these parties :

"Whereas, Granville Kimball, James Moore, and Martin O. Walker, have been staging in the State of Missouri and Territory of Kansas, under the name and style of Kimball, Moore & Co.; and whereas, said Kimball has sold his interest in said joint concern to said Martin O. Walker and James Moore ; and whereas, a settlement of all joint affairs and interest up to this date is agreed upon between said Kimball of the one part, and Walker and Moore of the other part : Now know all men by these presents, that this contract, made and entered into by and between the said Granville Kimball of the one part, and Martin O. Walker and James Moore of the other part, witnesseth, That the said Granville Kimball, for and in consideration of the undertakings on the part of said Walker and Moore, hereinafter expressed, has granted, bargained, sold, assigned, set over and delivered to said Martin O. Walker and James Moore all the right, title, claim and interest of said Kimball in and to all the personal property heretofore and at present belonging to the said firm of Kimball, Moore & Co., including stages, horses, mail contracts with the United States ; also, all the property not herein enumerated ; also, all the interest of said Kimball in and to all the real estate belonging legally or equitably to said firm of Kimball, Moore & Co., including leasehold and all other interest, whatever the same is, now in said firm, or in the name of either or any of the individual members of said firm, or in the name of any other parties. And it is agreed by and between the parties hereunto, that deeds, releases, and all necessary evidences of title, be, within a reasonable time, made by said Kimball to said Moore and Walker, for his said interest in such real estate. It is further agreed by and between the parties hereto, that the partnership heretofore existing between said parties, is this day dissolved by mutual consent, it being understood that such business is to be continued by said Walker and Moore. And it is agreed by and between the parties hereunto, that an account is to be taken and settlement made by William Vernon, of and con-

cerning all moneys received by said Kimball belonging to said firm, and of and concerning all disbursements made by said Kimball for and on account of said firm; and all accounts between said late firm of Kimball, Moore & Co. and said Kimball are to be finally and fully settled by the decision of said Vernon, and in the settlement of said accounts, said Kimball is to be allowed the sum of twelve hundred dollars per year, since July, A. D. 1854, as a salary for his services. And in consideration of the above sale, the said Walker and Moore agree to convey to said Kimball all the interest which the said Moore now has in a tract of about thirty acres of land lying north of Dixon, which is estimated at twenty-five hundred dollars, the one-half of said land already belonging to said Kimball; and said Walker and Moore agree to pay to said Kimball the sum of five thousand dollars within four months from the date hereof; and said Walker and Moore agree to pay, within three years from this date, to said Kimball, the sum of thirteen thousand one hundred and sixty-six dollars, with interest annually at ten per cent.—said last mentioned sum to be lessened or increased according to the result of the settlement to be made by said William Vernon, as aforesaid. And said Walker and Moore agree to pay all indebtedness and liabilities now owing and unpaid by said late firm of Kimball, Moore & Co., and to indemnify and save said Kimball harmless therefrom. As witness our hands this first day of April, 1856."

Vernon proceeded in his arbitration of the matters submitted to him by this agreement, and awarded against the defendants, as due from them to the complainant on their partnership concerns, the sum of eight thousand seven hundred and seventy-eight dollars and thirty cents, the notes given to John Frink & Co. and paid by complainant and Walker being excluded by the arbitrator in his investigation and award, he only embracing within it what he considered matters especially embraced in the submission.

The question arises here, was this a regular submission, and if so, of what matters? and was there an award in pursuance of the submission?

33

It is not necessary a submission should have any particular form. The parties here agree that their partnership is dissolved, and that complainant has transferred all his interest in the stage stock, and all his interest in the real estate, leasehold and otherwise, to the defendants, and they agree that Vernon shall take an account and make a settlement " of and concerning all moneys received by complainant, belonging to the firm of Kimball, Moore & Co., and of and concerning all disbursements made by said Kimball for and on account of said firm ; and all accounts between said late firm of Kimball, Moore & Co. and said Kimball, are to be finally and fully *settled* by the decision of said Vernon." There is no submission of any individual matters or claims.

What this shall be termed, a submission or a reference, is immaterial. It is an agreement in writing, not under seal, to refer all the accounts growing out of the partnership to the decision of Vernon, and he is "fully and finally to settle them." The account taken by Vernon, explained by his testimony, shows clearly, that the terms of the reference were not overleaped, and, therefore, as to all these matters, the parties must be bound by his award or decision, in the same manner as though they were parties to an action, and a judgment had been rendered against them. There is no question made as to the power of these parties to make this reference, or as to the form of the award, nor is it attacked in any way.

What, then, is the rule of law in such cases ? Regarding it as an arbitration, in the absence of any fraud or mistake, or charge of undue influences or corruption, the award must be held to be conclusive, upon the matters submitted.

This finding of the referee disposes of the partnership concern, and shows a balance due complainant, on that account, of eight thousand seven hundred and seventy-eight dollars and thirty cents, after allowing all just credits and counter-claims, and all other accounts growing out of the partnership.

The stock notes, so called, which were signed by Moore and indorsed by Walker, and paid as above stated, were not taken into this account. It appears by the testimony of Vernon, that the complainant insisted they should be taken into the

adjudication, and that defendants objected to their coming in, and he not deeming them within the terms of the submission, did not adjudicate upon them.

The bill is filed to subject these defendants to reimburse complainant for his part of the payment of these notes, as well as to account for partnership matters. The agreement of these parties, which we have inserted at length, stipulates that they will pay complainant five thousand dollars within four months from the date of the agreement, and within three years the sum of thirteen thousand one hundred and sixty-six dollars, with interest annually at ten per cent., "said last mentioned sum to be lessened or increased according to the result of the settlement to be made by said William Vernon."

It appears by the settlement made by Vernon, that on the day of the sale of these partnership effects and property to the defendants, viz., on the first of April, 1856, there was a balance due by complainant to the concern, of $4,387.70, with which he is charged—complainant is also charged with the five thousand dollars, as having been paid within the four months, and is credited by this sum and the thirteen thousand one hundred and sixty-six dollars, subject to any reduction or increase Vernon might allow, making complainant's credits eighteen thousand one hundred and sixty-six dollars. Deducting from this amount the debits of complainant as above, being nine thousand three hundred and eighty-seven dollars and seventy cents, makes the balance as stated by Vernon, as due complainant, of eight thousand seven hundred and seventy-eight dollars and thirty cents. For this, complainant is entitled to a decree, with interest.

In the same agreement the defendants stipulated, that they would "pay all indebtedness and liabilities now" (1st April, 1856,) "owing and unpaid by said late firm of Kimball, Moore & Co., and to indemnify and save said Kimball harmless therefrom."

These stock notes, according to the testimony of Vernon, had been paid by complainant, to John Frink & Co., about the first of October, 1855, and were not outstanding against the firm of Kimball, Moore & Co., and could not have been aken into the

account under this stipulation, that being to pay all "outstanding indebtedness and liabilities then" (April 1, 1856,) " owing and unpaid by said late firm of Kimball, Moore & Co." At that date they had been paid by complainant, and the scope of this bill is to subject the defendants to account to complainant jointly therefor, as an advancement to the firm.

Is there any ground for this claim? In the agreement of April 1, 1856, on the dissolution of the partnership of Kimball, Moore & Co., no allusion is made to these notes as having been paid by the complainant—or any reference whatever to them. It was claimed before the referee by the complainant, that they should be taken into the account, but the defendants objected without assigning any reason, and they were not adjudicated upon.

When John Frink & Co. dissolved and sold out, July 1, 1854, the complainant alone became the purchaser of the stock, and executed his own notes in payment with Walker, his indorser. Walker, in his answer, says, that the purchase was made for the joint benefit of himself and complainant, and the firm was Kimball & Co., hence his indorsement. Sometime after this, the date not given, the complainant, without the knowledge of Walker, sold to Moore one-third interest in the concern, Moore signing the notes. Now, as this was done without the knowledge or consent of Walker, he might have repudiated his own indorsements, the notes having been materially altered since they were made; but he makes no objection, but becomes a member of the firm of Kimball, Moore & Co. By signing these notes without objection by Walker, his indorsements being upon them, they became jointly and severally liable to pay them.

This appears from the receipt given by complainant to Walker, dated Chicago, September 22, 1855, and is exhibit four. Previous to this time, on the 23rd of August, 1854, Kimball, Moore & Co. had drawn on Walker for one thousand dollars, which Walker, on the 22nd September, 1854, paid " as part for contribution to the capital stock of said Kimball, Moore & Co., toward the Missouri stage stock and property, which G. Kimball originally purchased from J. Frink & Co.,

July 1, 1854." The receipt is dated Dec. 12, 1855, and is part of same exhibit. This is understood to be a payment on the notes given for that stock. On the 22nd September, 1855, by this same exhibit four, it appears complainant received of Walker, $17,638.85, on account of the original purchase of this stock, and making allowance for the advance payments, as the notes to Frink & Co. were not due, extinguished Walker's entire indebtedness for his one-third of the stock. But how is it with Moore's? Has he paid any part of the notes, or reimbursed complainant in any manner?

The bill of sale from complainant to him, dated December 5, 1854, is as follows:

" Whereas, upon the dissolution of the late firm of John Frink & Co., stage proprietors, they sold and conveyed unto me, the undersigned, all the property, real and personal, owned by said firm of John Frink & Co., in the State of Missouri, which property consisted of real estate, leasehold interest and stage stock; and whereas, I have this day sold unto James Moore, of St. Louis, one equal undivided third part of all the same property as it now stands: Now, therefore, know all men by these presents, that I, Granville Kimball, the undersigned, in consideration of the sum of seventeen thousand six hundred and sixty-six dollars, to me paid by said James Moore, have bargained, sold and conveyed, and by these presents do bargain, sell and convey unto the said James Moore, his heirs and assigns, one equal undivided third part of all the said property, real and personal, as it now stands, which was conveyed to me by the said John Frink & Co., subject to one-third of all liabilities now outstanding thereon. To have and to hold the same unto the said James Moore, his heirs and assigns forever.

" In witness whereof, I have hereunto set my hand and seal, this 5th day of December, A. D. 1854."

This bill of sale was drawn by C. B. Lord, Esq., in his office at St. Louis, at the time it bears date. He says, no money passed at the time of the delivery of the paper, or at any other time, so far as he knows. Kimball and Moore came to his office together, and Kimball said, in presence of Moore,

that he and Moore were jointly interested in the purchase of certain stage property from Frink & Co., and said that Moore desired a deed from him for his interest in the property, stating at the same time that he (Kimball) held the title to the property so purchased, but that the purchase was made on account of himself and Moore, or himself and Moore and Walker, one or the other—that Moore said he had made himself liable to pay his portion of the purchase-money, and he thought it was right he should have a paper showing or acknowledging his interest—witness was then directed to draw the paper which was delivered by Kimball to Moore, in his presence, as he believes.

This is the explanation the attorney gives of the execution and delivery of the bill of sale, and shows conclusively, by the admission of Moore, connected therewith, that he wanted the bill of sale or deed as evidence of his interest in the concern, he having made himself liable on the notes by signing them. He did not then pretend anything more. No money was then paid, nor did he claim that he had paid any, at any other time. His having signed the notes constituted the basis, and was the sole consideration, as he then stated, for the bill of sale.

But his counsel deny the right of the complainant to introduce parol evidence to explain the bill of sale, it being under seal, either in respect to the payment of the purchase-money, or in respect to its recitals of the purchase by Kimball of Frink & Co. being for himself, and that he is estopped, his heirs and assigns, by the recitals and admissions in the bill of sale under seal, from denying or contradicting a fact there deliberately recited and admitted.

The general rule, that a plain and unambiguous writing, whether under seal or not, cannot be varied or explained by parol, is not questioned, but it is subject to some exceptions. A receipt absolute on its face, may be contradicted; so may the recital of a money consideration in a deed of land as having been received by the grantor, be denied and explained or contradicted by parol.

It has often been held, that the usual clause in a deed of

land or other property acknowledging the receipt and declaring an acquittance of the consideration money, even though it be followed by a receipt of the same money indorsed on the deed, is not only inconclusive in an action of covenant, assumpsit, etc., for the purchase-money or any part of it, but some of the cases maintain that it is evidence of the lowest kind—that such a recital in a deed, or receipt on the back of it, are a mere formal part of the deed, often inserted when not a dollar has been paid. This we all know from experience and observation. *Hamilton* v. *Ex'rs of McGuire*, 3 Serg. & Rawle, 354 ; *Weigley's Administrators* v. *Weir*, 7 ib. 309. It has been so ruled in Massachusetts. *Wilkinson* v. *Scott*, 17 Mass. 256. And in several cases in New York. *Shephard* v. *Little*, 14 Johns. 210 ; *Bowen* v. *Bell*, 20 ib. 338. And in New Hampshire. *Pritchard* v. *Brown*, 4 N. H. 397 ; *Morse* v. *Shattuck*, ib. 229. And in Kentucky. *Hutchinson's Administrators and Heirs* v. *Sinclair*, 7 Monroe, 291 ; *Gully* v. *Grubbs*, 1 J. J. Marshall, 388. And in this State. *Ayres* v. *McConnell*, 15 Ill. 230. The same rule is adopted in Connecticut. *Belden* v. *Seymour*, 8 Conn. 313, against the opinion of Hosmer, C. J. And in Virginia. *Harvey* v. *Alexander*, 1 Randolph, 219 ; *Duval* v. *Bibb*, 4 Hen. & Mun. 113. The doctrine of these courts is, that it is only *prima facie* evidence of payment, and only conclusive when not contradicted.

In England, such an acknowledgment is held to be conclusive, and such is the rule in Maine, Maryland, North Carolina, and perhaps some other States.

The decision of this court in the case referred to, as well as the others cited, were upon deeds for the conveyance of land, the money consideration being acknowledged to have been received by the grantors, the only operation of which is, to prevent a resulting trust in the grantor, and to estop him forever to deny the deed for the uses mentioned in it. It does not, technically, vary the deed, if that be the only operation of the acknowledgment of a consideration. The fact that the deed was upon a certain consideration, cannot be denied, but the other fact, that the money was paid, may be. Perhaps the rule is well laid down in *Sprigg* v. *The Bank of Mount*

*Pleasant,* 14 Peters, 206, where the court say, that parol evidence is inadmissible to contradict, or substantially vary, the *legal import* of a written instrument. Now, the legal import of a deed of bargain and sale for a certain consideration, is, simply, that there is no resulting trust in the grantor, and he is estopped from ever thereafter denying that the deed was executed for the uses and purposes mentioned in it, but not, that the money was paid to him. This is the most reasonable rule, and ought to be applicable to all writings, whether under seal or not. Their legal import cannot be varied by parol, but other facts recited in them may be.

Now, testing this question by these views, what is the legal import of the deed from complainant to Moore? It is, that complainant had purchased the property from Frink & Co., and had sold one equal undivided third part of it to Moore. This recital cannot be contradicted by parol, and therefore, so much of the testimony of Judge Lord, going to vary or contradict this, that the property was bought for complainant and Walker, or for complainant, Walker and Moore, was inadmissible. The other part of his testimony, as to what Moore said at the time, that he had signed the notes, and thereby had made himself responsible for their payment, and wanted some evidence of his ownership, not being in contradiction of the legal import of the deed, was proper evidence to a jury to rebut the presumption of payment arising from its acknowledgment expressed in the deed.

But Moore's own conduct shows that no money was paid by him at or before the execution of the bill of sale, for he contended, that certain receipts signed by complainant, being exhibits seven, eight, nine and ten, and in his favor, were, and should be taken and considered by the referee, as so much money paid by him to complainant on stock amount, or on account of these notes. If he had paid for his share of this property, at or before the execution of this bill of sale or deed, he would so have stated to the referee, and would not have offered these receipts as evidence of such payment.

The claim, based upon these receipts was also exploded, and by Moore's own admission to Vernon, made repeatedly, that

he had never paid into the concern but about fifteen hundred
dollars, and that Vernon's award was within five hundred
dollars of his calculations.

Moore then has paid none of these stock notes, nor any
part of them.   The question now comes up, is Walker liable,
he having fully paid for his own share of the purchase?

This involves an inquiry into the nature and origin of this
firm of Kimball, Moore & Co.   The purchase of the staging
stock of Frink & Co., was made in the first instance by
complainant himself, but its true character is manifested by
the following writing, which binds Walker, as he has had the
benefit of it.   It is a part of the answer of L. G. Spalding,
and an exhibit in the cause and referred to above:

"$17,638.85.                              CHICAGO, Sept. 22, 1855.

Rec'd from M. O. Walker, seventeen thousand six hundred and thirty-
eight and 85-100 dollars, on account of the original purchase from J. Frink &
Co., of the stage stock and real estate in Missouri, at the original cost thereof,
to wit, fifty-three thousand dollars, which said purchase, although in the name
of G. Kimball, nevertheless was understood and agreed, by and between said
Kimball and said Walker, should be joint and equal interest to each party;
and subsequently was further agreed to admit James Moore as a joint and equal
partner in said stock and real estate, he paying, or to pay, his respective share
of the cost thereof, with interest; in which event, the said Kimball, Moore
and Walker should each respectively own and hold equal shares and interest
of one-third each, the purchase of which to date and take effect on and from
July 1, 1854, the same as purchased from J. Frink & Co.

G. KIMBALL."

It was admitted that the handwriting of the body of this
paper is the handwriting of Walker, and the signature there-
of, complainant's.

It is apparent from this paper that Walker acknowledged
himself a joint partner with complainant in the first instance,
and after Moore was admitted, he also acknowledges that he
was a joint partner with complainant and Moore, each hold-
ing equal shares and interest of one-third, and this to take
effect from the 1st day of July, 1854, the date of the pur-
chase from Frink & Co.   This concludes Walker—it estops
him from denying that he was a joint partner, and, as such,
responsible for the liabilities of the firm.   Here the question
arises, were these notes given to Frink & Co. and paid by

complainant, a liability of the firm? They were not signed by the firm name, that is certain. The debt, in its origin, was the individual debt of complainant, for which he gave the notes with Walker's guarantee. When Moore signed the notes with Walker's guarantee upon them, he not objecting, the guarantee continued, and on Moore's failure to pay Frink & Co., Walker would have been liable to pay them. If Walker had paid all the notes, complainant and Moore would have been liable to him, for as to the payees, Frink & Co., all were jointly liable. As to each other, each was bound to pay one-third of the note. This was done both by Walker and complainant, but not by Moore, Kimball paying Moore's part for him. The question arises, was this one-third which Moore was bound to pay, but which was in fact paid by complainant, an advance by complainant to the firm or to Moore? It is not indispensable to decide this question, for if it was an advance to the firm by complainant, it was released to Walker and Moore, or assigned to them when complainant assigned and transferred his interest to them, by complainant's assignment of his interest in the firm property and assets, when he sold out to Walker and Moore. *Taylor* v. *Coffing et al.*, 23 Ill. 273. But if it was an advance by complainant to Moore, then it created no liability against Walker, but against Moore only, for whom the advance was made, and to him alone must complainant look for reimbursement. The question of liability, we, of course, leave open and undetermined in this suit.

Walker not being liable to contribute for the advance made by complainant in the payment of the stock notes, the defendants, however, are liable for the amount of the award, for which, being eight thousand seven hundred and seventy-eight dollars and thirty cents, with interest from its rendition, complainant is entitled to a decree.

The decree of the court below is reversed, and the cause remanded, with directions to enter a decree for the amount of said award and interest, if the same, or any part thereof, has not been already paid and satisfied.

*Decree reversed.*

It is ordered, that the judgment and decree heretofore entered in this cause be so changed as to refer to the master in chancery of the Cook Circuit Court the question of the indebtedness of Moore to Kimball, and of Walker to Kimball, severally, and that a decree be entered for the amounts so found respectively in favor of Kimball.

*Per curiam.* The motion for a re-hearing in this case must be overruled. In deciding this motion we deem it proper to say, that the last order entered in October last should not be so construed as in any way to deprive the court below of any of its control over the master's report. That report will be disposed of like any other report of a master, upon a reference made by that court in any other case. The principal opinion settles the principles of liability so clearly that the court below can have no difficulty in ascertaining whether anything be due on the award, either of principal or interest.